UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA WATTS | No. 2:15-cv-0186-KJN |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from June 27, 2011, through the date of the final administrative decision.  (ECF No. 18.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 23.)

////

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on December 8, 1970, completed a single year of college, and is able to communicate in English.  (Administrative Transcript ("AT") 258, 260, 265.)[2]  She has worked as an in-home caregiver.  (AT 260.)  Plaintiff applied for DIB and SSI on July 29, 2011, alleging that her disability began on June 27, 2011, at the age of 40.  (AT 227-39.)  Plaintiff alleged that she was disabled primarily due to fibromyalgia, bipolar disorder, arthritis, and narcolepsy.  (AT 113.)  After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on July 9, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 34-78.)  The ALJ issued a decision dated October 17, 2013, determining that plaintiff had not been under a disability, as defined in the Act, between June 27, 2011, and the date of that decision.  (AT 13-27.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 21, 2014.  (AT 1-6.)  Plaintiff then filed this action in federal district court on January 23, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly rejected the opinions of plaintiff's treating physician Dr. Tina Luig; and (2) whether the ALJ erroneously discounted plaintiff's own testimony concerning her symptoms and functional limitations.

////

////

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

         A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401, et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382, et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the

remained insured for purposes of DIB through December 31, 2016. (AT 15.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since June 27, 2011, the alleged onset date.  (Id.)  At step two, the ALJ found that plaintiff had the following severe impairments:  fibromyalgia, bipolar disorder, obesity, hypertension, and narcolepsy.  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 16-17.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except[*sic*] occasionally climb, balance, stoop, crouch, and crawl but can kneel without limits.  She cannot climb ladders/ropes/scaffolds.  She is limited to simple, repetitive tasks with occasional public contact and frequent but not constant interaction with coworkers and supervisors.

(AT 17.)

At step four, the ALJ found, based on the VE's testimony, that plaintiff was not capable of performing any past relevant work.  (AT 25.)  At step five, the ALJ determined that, in light of plaintiff's age (a younger individual), education (at least high school with ability to communicate in English), work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  (AT 25-26.)  Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from June 27,

---

claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

2011, through the date of the ALJ's decision.  (AT 26.)

B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

*1. Whether the ALJ improperly discounted the opinions of plaintiff's treating physician Dr. Luig.*

First, plaintiff contends that the ALJ failed to assign the proper weight to the treating opinions of Dr. Luig.  Specifically, she argues that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence from the record for assigning "slight to moderate weight" to Dr. Luig's opinions regarding the functional limitations caused by plaintiff's impairments.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any

---

[4] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

5

event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Here, Dr. Luig, plaintiff's treating physician, gave two opinions. The first came in the form of a letter dated July 20, 2011, which reads:

> Monica Watts is disabled due to fibromyalgia, bipolar disorder, arthritis, and narcolepsy. At least one of her conditions is permanent. She has been struggling with her disabilities and has had difficulty working for the last htree [*sic*] years. Her conditions and treatment are currently being overseen by myself. Patient is compliant with the treatment and recommendations.

(AT 525.)[5]

Plaintiff argues that the ALJ failed to provide any specific and legitimate reasons for assigning reduced weight to this opinion.  However, even assuming, without deciding, that the ALJ provided insufficient reasons for discounting this particular opinion, such error would have been harmless.  Dr. Luig's letter contains no functional limitations save for the conclusory assertions that plaintiff "is disabled" and "has had difficulty working" (id.), which are opinions on issues reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 416.927(d)(1) (same); Allen v. Comm'r of Soc. Sec., 498 Fed. App'x 696, 696 (9th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1)-(2)) ("A treating physician's opinion on the availability of jobs and whether a claimant is disabled are opinions on issues reserved to the Commissioner."). "A treating source's opinion on issues reserved to the Commissioner can never be entitled to controlling weight or given special

---

(6) specialization.  20 C.F.R. § 404.1527.

[5] While plaintiff does not assert that the ALJ improperly assessed the July 2011 letter in the body of her motion, she does appear to challenge the ALJ's consideration of the letter in a footnote. (ECF No. 18 at 17-18, n.2.)

significance." Allen, 498 Fed. App'x at 696 (citing SSR 96-5p, 1996 WL 374183 *5). Therefore, even had the ALJ erred in assessing this opinion, such error was harmless.[6]

Dr. Luig's second opinion was hand written on a checklist form and dated January 5, 2012. (AT 571-74.) Dr. Luig diagnosed plaintiff with fibromyalgia, obesity, diabetes, bipolar disorder, chronic low back pain, and trochanteric bursitis. (AT 571.) Dr. Luig stated that plaintiff's symptoms were "chronic widespread pain, back pain, tiredness," and that the limitations she opined were "mostly due to pain." (AT 571, 574.)

Dr. Luig opined that plaintiff's symptoms would "occasionally" interfere with the attention and concentration needed to perform even simple work tasks.[7] (AT 572). Dr. Luig opined that plaintiff was capable of low stress jobs, and that her medications had no side effects. (Id.) Dr. Luig opined that plaintiff could walk one block without rest, and could sit for up to thirty minutes and stand for up to twenty minutes at one time. (Id.) She further opined that plaintiff could stand or walk less than two hours, and sit for about two hours in an eight-hour workday. (AT 573.) Dr. Luig opined that plaintiff would need to get up and walk for five minutes every ten minutes throughout the course of an eight-hour workday. (Id.) Dr. Luig further opined that plaintiff needed a job that permitted shifting positions at will, allowed her to take unscheduled five minute breaks to walk every thirty minutes, and allowed her to elevate her legs with prolonged sitting. (Id.)

In addition, Dr. Luig opined that plaintiff could lift and carry less than ten pounds frequently and ten pounds occasionally, but could never lift or carry twenty pounds or more. (Id.) Dr. Luig opined that plaintiff could twist, stoop, or climb stairs occasionally, crouch or squat

---

[6] In a footnote, plaintiff appears to take issue with the ALJ's consideration of a February 2013 statement by Dr. Luig. (ECF No. 18 at 22-23, n.5.) Plaintiff also notes, however, that Dr. Luig's February 2013 statement contained "no RFC assessment." (Id.) A review of that record confirms that it did not contain an opinion by Dr. Luig. (AT 1187-89.) Accordingly, while plaintiff challenges the validity of the reasons the ALJ gave for assigning lesser weight to the "opinion" contained in Dr. Luig's February 2013 statement, any error in the ALJ's consideration of that statement was harmless as it did not contain a functional opinion that the ALJ was required to weigh.

[7] The form defines "occasionally" as between 6% and 33% of an 8-hour working day. (AT 572.)

7

1  rarely, but could never climb ladders.  (AT 574.)  Dr. Luig opined that plaintiff did not need a
2  cane, and did not have significant limitations with reaching, handling or fingering.  (Id.)  On the
3  section of the form inquiring whether plaintiff's impairments were likely to produce "good days"
4  and "bad days," Dr. Luig checked "yes."  (Id.)  Finally, Dr. Luig opined that plaintiff's
5  impairments were likely to cause her to be absent for more than four days per month.  (Id.)

6        The ALJ discounted Dr. Luig's second opinion because it relied too heavily on plaintiff's
7  subjective statements regarding the extent of her pain and functional limitations, statements that
8  the ALJ found to lack credibility.  (AT 23.)  "An ALJ may reject a treating physician's opinion if
9  it is based 'to a large extent' on a claimant's self-reports when those self-reports have been
10 properly discounted as incredible."  Tommasetti, 533 F.3d at 1041 (citing Morgan v. Comm'r
11 Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)).

12       In support of her argument that the ALJ's reasoning based on Dr. Luig's overreliance on
13 plaintiff's subjective complaints was not a specific and legitimate reason, plaintiff cites to the
14 Ninth Circuit Court of Appeals' holding in Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir.
15 2004), which found that an ALJ erred in discounting the opinions of the claimant's treating
16 physicians because those physicians did not rely on objective medical evidence to find that the
17 claimant's fibromyalgia caused disabling limitations and, instead, relied on the claimant's
18 subjective complaints regarding that impairment.  In Benecke, the Ninth Circuit Court of Appeals
19 noted that an ALJ cannot effectively require objective evidence of fibromyalgia, which is "a disease
20 that eludes such measurement."  Id.  Plaintiff argues that the Ninth Circuit Court of Appeals' ruling
21 in Benecke prevented the ALJ from citing to Dr. Luig's reliance on plaintiff's subjective complaints
22 to support her decision to discount Dr. Luig's opinion.  This case, however, is distinguishable from
23 Benecke in that the ALJ here did not require objective evidence to support the existence of
24 fibromyalgia or find that Dr. Luig's lack of objective evidence to support her opinion regarding
25 plaintiff's fibromyalgia was a reason to discount that opinion.

26       In fact, the ALJ determined that plaintiff's fibromyalgia was a severe impairment.  (AT 15.)
27 Furthermore, the ALJ believed plaintiff's subjective complaints to be partially credible.  (AT 19, 23.)
28 Nevertheless, as discussed below, the ALJ properly found that plaintiff's testimony regarding the

severity of her impairments and her inability to engage in work activity was too extreme in light of the rest of the record. (AT 24.) Unlike in Benecke, the ALJ did not rely on the fact that there was no objective medical evidence to support Dr. Luig's consideration of plaintiff's fibromyalgia, nor did she determine that Dr. Luig's reliance on plaintiff's subjective complaints was grounds for assigning Dr. Luig's opinion less weight. Rather, the ALJ appropriately reasoned that Dr. Luig relied "*too heavily on* [plaintiff's] subjective complaints such as sharp and dull pain all over, muscle spasm, fatigue and her own allegation that she needs a break for 30 minutes." (AT 23 (emphasis added).) As discussed below, substantial evidence in the record supported this proper determination.

First, the ALJ assigned "substantial weight" to the opinion of Dr. Jaojoco, a State agency physician who performed a comprehensive neurological examination of plaintiff on September 24, 2011. (AT 23, 543-48.) Dr. Jaojoco was given a written copy of plaintiff's subjective complaints as well as a thorough oral history of plaintiff's medical conditions and symptoms, including all fifteen of the medications that plaintiff was taking at the time and their dosages. (AT 543-44.) Dr. Jaojoco performed a clinical examination, found that plaintiff had 18 out of 18 tender points, and diagnosed plaintiff with fibromyalgia. (AT 546.) Dr. Jaojoco also diagnosed plaintiff with diabetes, narcolepsy and left hip degenerative joint disease, as well as noting plaintiff's bipolar disorder. (AT 545-47.)

However, even after considering plaintiff's subjective complaints and diagnosing plaintiff with fibromyalgia, Dr. Jaojoco opined limitations that were far less restrictive than the extreme limitations assessed by Dr. Luig. Dr. Jaojoco opined that plaintiff could stand or walk up to six hours, sit without limitation, and did not require an assistive device. (Id.) Dr. Jaojoco further opined that plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently.[8] (Id.) Dr. Jaojoco opined that plaintiff was limited to occasional climbing, balancing, stooping, crouching and crawling, but had no restrictions kneeling. (Id.) Finally, Dr. Jaojoco opined that plaintiff had no manipulative or environmental limitations. (AT 548.) This drastically different

---

[8] The ALJ did not credit this aspect of this opinion in light of the other evidence in the record, including Dr. Luig's opinion, finding that plaintiff was somewhat more restricted in her ability to lift and carry. (AT 23.)

interpretation of the impact of plaintiff's conditions substantially supported the ALJ's conclusion that Dr. Luig, while properly diagnosing plaintiff with fibromyalgia based on plaintiff's subjective statements, relied too heavily on the aspects of plaintiff's subjective statements the ALJ properly found incredible when determining the functional impact of plaintiff's fibromyalgia and other physical impairments.

Second, the ALJ also highlighted the inconsistencies between the extreme limitations complained of by plaintiff and opined by Dr. Luig and the level of functioning indicated by plaintiff's reported daily activities. For example, plaintiff claimed to be unable to stand, sit, or walk due to her pain, and Dr. Luig opined extreme limitations regarding plaintiff's abilities to stand, sit, and walk that largely reflected those claims. (AT 45, 68, 572-73.) However, elsewhere in the record, plaintiff reported that she was capable of adequately taking care of her household and children, that she was able to take buses, and that she took care of her own self-care, shopping, and light household chores.[9] (AT 535-36.) Furthermore, she completed a medical exercise program in 2012, and then was discharged from physical therapy because she was using the physical therapy facility for free access to treadmills and weights, instead of establishing a home exercise program. (AT 823, 827, 976.)

Similarly, plaintiff reported that she took hour-long bus rides to attend college classes at Sierra College. (Id.) Plaintiff alleged that her difficulty riding the bus and her difficulties participating in the classes were the result of her alleged mental impairments, not disabling pain from her physical impairments. (AT 24, 57-58.) The fact that plaintiff's allegedly disabling pain did not prevent her from making an hour-long commute, attending a mathematics class and a water exercise class, and then making another hour-long commute home was simply not

---

[9] The court notes the discrepancy between this account given to Dr. Daigler and the account plaintiff gave to Dr. Jaojoco two days later. On September 24, 2011, plaintiff told Dr. Jaojoco that she does not do chores around the house, she sits and lies on the couch most of the time, and that her children do the laundry. (AT 544.) This disparity is accentuated by the extremely short time period between the statements and the fact that Dr. Jaojoco, a medical doctor who was evaluating plaintiff's physical condition, was given a much more restricted account of plaintiff's daily activities than Dr. Daigler, a board certified psychologist charged with evaluating plaintiff's mental condition.

10

consistent with plaintiff's statements that she suffered from disabling physical impairments, or the severe limitations opined by Dr. Luig that appear to have reflected those statements. (AT 57, 61.) In short, the ALJ properly determined that the activities that plaintiff stated she engaged in on a regular basis despite her physical impairments undermined both plaintiff's claims of disabling symptoms and limitations and Dr. Luig's reliance on those statements in support of her opinion that plaintiff had severe physical limitations that rendered her disabled.[10]

Accordingly, substantial evidence supported the ALJ's conclusion that Dr. Luig relied too heavily on plaintiff's subjective statements. Because this was a specific and legitimate reason for discounting Dr. Luig's opinion, the ALJ did not err by depending on it to support her determination.[11]

> 2. *Whether the ALJ erroneously discounted plaintiff's own testimony concerning her symptoms and functional limitations*

As noted above, plaintiff also contends that the ALJ improperly rejected plaintiff's own testimony regarding the extent of her symptoms and functional limitations.

---

[10] The court also notes that Dr. Luig's own records regarding the severity of plaintiff's physical impairments were not consistent, and appeared to vary with plaintiff's desires. On November 3, 2011, between Dr. Luig's two opinions alleging total disability, plaintiff informed Dr. Luig that her pain was a 5-to-6 out of 10. (AT 702.) Dr. Luig noted that plaintiff's fibromyalgia and other chronic conditions were stable with medications and advised her to go back to work. (AT 702-03.) Then, apparently at plaintiff's request, Dr. Luig gave plaintiff a letter stating that her impairments were currently stable with medication and that plaintiff was released to return to work. (Id.) Such a statement is inconsistent with the formal opinions alleging that plaintiff was totally disabled provided by Dr. Luig on July 20, 2011, and January 5, 2012. (AT 525, 571-74.) Furthermore, in 2012, Dr. Luig again found that plaintiff's conditions were stable with medication, refused to send plaintiff to pain management, and recommended that she exercise. (AT 865, 1026.)

[11] The ALJ also incorrectly stated that Dr. Luig was a gynecologist, not a specialist in orthopedics, and relied on that as a reason for discounting her opinion. (AT 23.) Plaintiff asserts that this reasoning was in error because Dr. Luig was board certified in Family Medicine. However, even assuming that the ALJ's reasoning regarding Dr. Luig's medical specialty was incorrect, such an error was harmless in light of the ALJ's other specific and legitimate reasons for discounting Dr. Luig's opinion discussed above. Harlow v. Soc. Sec. Admin., Com'r, 577 F. App'x 698 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)) (finding that the ALJ's improper reason for discounting a physician's opinion was harmless where "the ALJ provided an independent specific and legitimate reason for assigning [the relevant] opinion little weight.").

11

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (<u>quoting</u> <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between his testimony and his conduct, [claimant's] daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." <u>Id.</u> at 959.

In support of her adverse credibility determination, the ALJ here relied on plaintiff's daily activities, the fact that plaintiff received conservative treatment, and her own observations of plaintiff at the hearing. (AT 24-25.)

a. <u>Plaintiff's daily activities</u>

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, plaintiff alleged at the hearing that her pain did not prevent her from making an hour-long commute, attending a mathematics class and a water exercise class, and then making another hour long commute home. (AT 57, 61.) Further plaintiff alleged that her difficulty riding the bus and her difficulties participating in the classes were the result of her alleged mental impairments, not disabling pain. (AT 24, 57-58.) The ALJ also considered plaintiff's ability to drop off and pick up kids, run errands, drive and shop for an hour and a half. (AT 300, 324.)

The ALJ acknowledged that the record reflected that plaintiff was somewhat inhibited in her ability to physically perform and needed assistance in performing some of the above daily activities. In particular, the ALJ found that plaintiff could only lift twenty pounds occasionally, and ten pounds frequently, and was limited in several of her postural limitations. (AT 24.) The ALJ also found that plaintiff's mental impairments limited her to simple repetitive tasks. (AT 25.) These limitations undoubtedly had a great impact on plaintiff's lifestyle. (AT 26.) However, it was reasonable for the ALJ to determine that the daily activities that plaintiff testified she was still capable of carrying out were inconsistent with her allegations that she was unable to sit, stand, or lie down for very long, and with her more general claims regarding the extent of her

13

pain and the debilitating effect of her physical impairments. (AT 324.)

It is the function of the ALJ to resolve ambiguities such as these, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

Furthermore, the ALJ properly relied on several contradictory statements made by plaintiff to support her determination that plaintiff was not fully credible. For example, in a self-report regarding her functional capacity, plaintiff alleged that she experienced "least one side affect [*sic*]" for each of her many medications, but only stated that her medications upset her stomach. (AT 24, 328.) Furthermore, as the ALJ noted in her decision, plaintiff also reported that she had problems in all areas of functioning except for seeing, talking, hearing, and using her hands, which was undermined by her statements elsewhere in the record. (AT 24.) The ALJ also relied on the inconsistencies between plaintiff's various accounts of her daily living activities, particularly with regard to her ability to leave the house and drive. (Id.)

b. Conservative Treatment

Plaintiff's relatively conservative treatment was also a proper consideration relied on by the ALJ in support of her adverse credibility determination. See Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ noted that plaintiff did not participate in the treatment normally associated with a severe pain syndrome, such as pain management. (AT 24-25.) Plaintiff was repeatedly advised to continue taking medications and go to physical therapy. (AT 483, 965.) Plaintiff was later discharged from physical therapy because she was using the physical therapy facility for free access to treadmills and weights, instead of establishing a home exercise program. (AT 976.) Shortly after

being discharged from physical therapy, plaintiff requested to be referred to pain management but Dr. Luig refused and recommended that plaintiff again be referred to physical therapy. (AT 1026.)

Furthermore, the record shows that plaintiff had a history of noncompliance with her prescribed medications and of unilaterally modifying her medications. (AT 468, 599, 1063, 1215, 1309.) When given the opportunity to demonstrate her alleged memory impairments in a clinical test, plaintiff refused. (AT 1206, 1295.) Dr. Luig repeatedly found that plaintiff's conditions were stable with medication. (AT 702-03, 865.) All of these facts in the record provided substantial evidence in support of the ALJ's finding that plaintiff received relatively conservative treatment for her impairments and that those impairments were generally well controlled with that course of treatment.

c. Personal observations at the hearing

Although the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall credibility evaluation. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); SSR 96-7p, at *8. Here the ALJ observed that plaintiff's pain did not prevent her from sitting at the hearing, and she displayed evidence of no more than mild pain or discomfort while testifying. (AT 24.) The ALJ specifically noted that the hearing was short-lived and not a conclusive indicator of plaintiff's pain, and therefore gave it only slight weight. (AT 24-25.) Nevertheless, the ALJ's consideration of these observations in her decision was proper.

In light of the above, the court finds that the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony of disabling symptoms and functional limitations beyond the limitations assessed in the ALJ's RFC that were supported by substantial evidence from the record.[12]

---

[12] While the ALJ also considered other reasons for her decision, the reasons discussed here are sufficient to uphold the ALJ's decision and therefore the court does not consider the remaining reasons.

V. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 23) is GRANTED.
3. Judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: March 9, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE